**STATE of Maine**

v.

**Michael WILSON.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 12, 1995.

Decided Feb. 29, 1996.

R. Christopher Almy, District Attorney and Jeffrey M. Silverstein, Assistant District Attorney, Bangor, for the State.

Perry O'Brian, Bangor, for Defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Defendant Michael Wilson appeals from a judgment of conviction for assault, Class C, entered in the Superior Court (Penobscot County, *Mead, J.*), based on Wilson's three prior convictions for assault at the time he committed a new assault on or about July 6, 1993.[1] Wilson contends that the filing of a post-conviction, pre-sentence indictment alleging the three prior assault convictions violated his right against double jeopardy and his rights to due process and a speedy trial. We affirm the judgment.

On August 2, 1993, a Penobscot County grand jury returned an indictment against Wilson charging him with aggravated assault in violation of 17-A M.R.S.A. § 208 (1964),[2] a Class B crime. At his arraignment, Wilson entered a plea of not guilty. On August 19, 1993, Wilson filed a motion for a speedy trial, which was granted. On October 19, 1993, a jury returned a verdict of not guilty on the aggravated assault charge and guilty on the lesser included offense of simple assault, a Class D crime.[3] *See* 17-A M.R.S.A. § 207 (1964). The court continued the case for sentencing.

On October 20, 1993, the State filed an ancillary information charging that Wilson had three prior assault convictions in Maine.[4] Wilson filed three motions to dismiss this information, arguing that (1) the State had to proceed by way of an indictment; (2) the filing of the post-conviction, pre-sentence information violated his right to a speedy trial; and (3) the information violated his right against double jeopardy and his right to due process under the federal and state constitutions. The court denied all three motions.

Subsequently, the State dismissed the information and obtained an ancillary indict-

---

1. The effect of this judgment was to enhance the sentencing class for the July 6, 1993 assault from Class D to Class C, pursuant to 17-A M.R.S.A. § 212 (Supp.1995). 17-A M.R.S.A. § 212 provides in relevant part:

   A violation of this chapter committed against a member of the actor's family or household that would otherwise be a Class D crime is a Class C crime if the actor has 2 or more prior Maine convictions for violations of any combination of this chapter or of Title 19, section 769. For purposes of this section, the dates of the prior convictions must precede the commission of the offense being enhanced by no more than 5 years, although both prior convictions may have occurred on the same date.

2. The alleged assault was against Wilson's mother.

3. The court instructed the jury, *sua sponte*, on simple assault.

4. 15 M.R.S.A. § 757 authorizes the use by the State of "ancillary" charging instruments to allege the existence of a criminal defendant's prior convictions. It provides in relevant part:

   *The prior conviction* may be alleged as part of a count in the complaint, information or indictment alleging the principal offense or *may be alleged in an ancillary complaint, information or indictment.* An ancillary charging instrument may be filed with the court at any time prior to the imposition of the sentence on the principal offense and sentencing shall be continued until after there has been an opportunity to obtain an indictment if an indictment is required for the allegation of the prior conviction or adjudication.

   15 M.R.S.A. § 757(1) (Supp.1995) (emphasis added).

ment alleging that Wilson had been convicted of assault on three previous occasions. Wilson entered a plea of not guilty, waived his right to a jury trial on the ancillary indictment, and filed a motion to renew his second and third motions to dismiss the ancillary indictment. The court denied the motion.

On February 3, 1994, a bench trial was held on the allegations contained in the ancillary indictment. Based on a stipulation that Wilson had been convicted of assault at least twice before, the court found Wilson guilty of the charge alleged in the ancillary indictment. This conviction enhanced Wilson's underlying simple assault conviction from a Class D crime to a Class C crime. *See* 17-A M.R.S.A. § 212 (Supp.1995). The court imposed a sentence of two years of confinement, with all but six months suspended, and two years of probation.[5]

### Double jeopardy

■ Criminal defendants are protected against double jeopardy by the Fifth Amendment of the United States Constitution. U.S. Const. amend. V.[6] In Maine, criminal defendants are also protected against double jeopardy by Article I of the Maine Constitution. Me. Const. Art. I, § 8.[7] The right to be free from double jeopardy under the Maine Constitution is coextensive with the right under the federal Constitution. *State v. Howes,* 432 A.2d 419, 423 (Me.1981). The Double Jeopardy Clauses of the United States Constitution and the Maine Constitution "protect a criminal defendant from three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *State v. Savard,* 659 A.2d 1265, 1266 (Me. 1995). Wilson contends, without elaboration, that the State's use of an ancillary indictment to enhance his sentence on the principal offense of assault violates his right to be free

from double jeopardy, apparently on the theory that the trial on the ancillary indictment was a second prosecution for the assaults alleged therein.

■ Ancillary charging instruments, which are specifically authorized by statute, *see* 15 M.R.S.A. § 757(1), permit the State to enhance a criminal defendant's sentence on the principal offense by proving the existence of convictions that were obtained prior to the defendant's conviction on the principal offense. Consistent with 15 M.R.S.A. § 757(1), the ancillary indictment in the instant case charged that Wilson was convicted of assault on three occasions prior to the conviction on the principal charge. An ancillary indictment merely allows the State to prove the existence of previous offenses for the purpose of sentence enhancement; it is not a second prosecution for those offenses. In *Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948), the Supreme Court held:

> The sentence as a ... habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.

*Gryger,* 334 U.S. at 732, 68 S.Ct. at 1258. Wilson's right against double jeopardy was not violated.

### Due process

■ Without citing any authority, Wilson contends that the State's use of the ancillary indictment violated his right to due process. Specifically, he contends that the procedural due process guarantees of the Fourteenth Amendment of the United States Constitution required the State to give him notice that it intended to use his previous assault

---

**5.** The trial court stayed execution of Wilson's sentence pending appeal.

**6.** The Fifth Amendment provides, in relevant part:
... nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb ...

U.S. Const. amend. V.

**7.** Article I, § 8 provides:
No person, for the same offense, shall be twice put in jeopardy of life or limb.
Me. Const. Art. I, § 8.

convictions for enhancement purposes prior to trial on the principal offense.

The United States Supreme Court expressly rejected such an interpretation of procedural due process in *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962):

> Even though an habitual criminal charge does not state a separate offense, the determination of whether one is an habitual criminal is 'essentially independent' of the determination of guilt on the underlying substantive offense. Thus, although the habitual criminal issue may be combined with the trial of the felony charge, 'it is a distinct issue, and it may appropriately be the subject of separate determination.' If West Virginia chooses to handle the matter as two separate proceedings, *due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding.*

*Oyler,* 368 U.S. at 452, 82 S.Ct. at 503–04 (emphasis added) (citations omitted). Wilson's argument is without merit.

*Right to a speedy trial*

█ Finally, Wilson argues that the passage of seven months from the time of his arrest on the principal assault charge to the time of the trial on the ancillary indictment violated his right to a speedy trial. A delay of seven months does not raise a presumption of prejudice, *State v. Mahaney,* 437 A.2d 613, 620 (Me.1981), and there is no need to assess the four factors we have identified as being relevant to an analysis of speedy trial claims.[8]

The entry is:

Judgment affirmed.

All concurring.

---

**8.** The four factors are: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *State v. Joubert,* 603 A.2d 861, 863 (Me.1992).