MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2015 ME 158
Docket:        Yor-15-10
Argued:        November 4, 2015
Decided:       December 3, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

CHRISTOPHER R. AYOTTE

v.

STATE OF MAINE

ALEXANDER, J.

[¶1]  This appeal is before us based on a certificate of probable cause, issued pursuant to 15 M.R.S. § 2131(1) (2014) and M.R. App. P. 19(f), authorizing Christopher R. Ayotte to appeal from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) denying his petition for post-conviction relief.  The certificate authorized appeal on the issue of "[w]hether Ayotte's trial counsel in York County provided ineffective assistance in failing to seek dismissal of the indictment (ALFSC-CR-2013-165) on the ground that it would subject Ayotte to double jeopardy."

[¶2]  Ayotte contends that the court erred as a matter of law when it denied his petition for post-conviction relief after his trial counsel did not assert a double jeopardy defense to Ayotte's second prosecution for the same theft offense.  Ayotte

argues that such a failure constitutes per se ineffective assistance of counsel. We vacate the trial court's judgment denying him post-conviction relief.

## I. CASE HISTORY

[¶3] In February 2013, Ayotte was indicted in the Unified Criminal Docket (Cumberland County) for burglary (Class B), 17-A M.R.S. § 401(1)(B)(4) (2014), and theft by unauthorized taking or transfer (Class C), 17-A M.R.S. § 353(1)(B)(4) (2014). The charges were based on an alleged improper entry of and theft of items from a South Portland residence on November 29, 2012. Count two of the indictment, charging Class C theft, stated:

> On or about November 29, 2012, in South Portland, Cumberland County, Maine, CHRISTOPHER AYOTTE, did commit theft by obtaining or exercising unauthorized control over jewelry and/or electronics and/or silverware, property of [the victim], of a value more than $1,000, with the intent to deprive [the victim] of the property.

[¶4] In March 2013, the Cumberland County case was resolved through a plea agreement, by which the burglary charge was dismissed and Ayotte pleaded nolo contendere to Class C theft by unauthorized taking or transfer. He was sentenced to thirty-two months of imprisonment.

[¶5] In April 2013, Ayotte was indicted in the Superior Court (York County) for theft by receiving stolen property (Class C), 17-A M.R.S. § 359(1)(B)(6) (2014), for allegedly receiving, retaining, or disposing of some of

the same stolen property—silverware—to pawnshops in Biddeford on November 29, 2012. The indictment stated:

> On or about November 29, 2012, in Biddeford, YORK County, Maine, CHRISTOPHER R AYOTTE, did receive, retain, or dispose of George Jensen stainless steel dinner forks and a serving fork, property of [the victim], knowing it had been stolen, or believing it had probably been stolen, with the intent to deprive [the victim] of the property. CHRISTOPHER R AYOTTE was convicted of THEFT on April 25, 2007, in the York County Superior Court, Alfred, Maine, Docket No. CR-06-1651, and of THEFT on October 31, 2011, in the York County Superior Court, Alfred, Maine, Docket No. CR-11-242.

*See* 17-A M.R.S. § 359(1)(B)(6) (enhancing the class of the crime when the defendant has been previously convicted of theft two or more times).

[¶6] Ayotte was appointed different trial counsel in York County. In July 2013, the York County case was resolved by a plea agreement with a fully suspended sentence of six months in jail, followed by two years of probation, to be served consecutive to Ayotte's Cumberland County sentence.

[¶7] In January 2014, Ayotte filed a petition for post-conviction relief from the York County conviction and sentence. *See* 15 M.R.S. § 2124 (2014). After amendment with leave of the court, Ayotte's petition pleaded one ground for relief: that his trial counsel in the York County matter had rendered ineffective assistance of counsel due to failure to move to dismiss the York County indictment on double jeopardy grounds. *See* U.S. Const. amend. V; Me. Const. art. I, § 8; *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

4

[¶8]  The State answered the petition and appended an affidavit of Ayotte's original counsel in the York County matter.  Ayotte's original counsel averred that he (1) was aware of Ayotte's Cumberland County conviction for theft of the same silverware and his resulting sentence; (2) "research[ed] this for a possible double jeopardy violation" but "came to the conclusion that these were similar, yet completely different criminal acts"; and (3) attempted to negotiate a plea agreement for a sentence concurrent to the Cumberland County sentence because "the crimes were 'sort of' linked," but because the State was unwilling to offer a concurrent sentence, the parties eventually agreed upon a fully suspended jail sentence, but with probation consecutive to the Cumberland County sentence.

[¶9]  After hearing oral argument, the court denied Ayotte's request for relief.  It concluded that Ayotte "was not prosecuted or punished twice for the same offense" because "different conduct forms the basis of the Cumberland and York County cases."

[¶10]  Ayotte filed a timely notice of appeal and a memorandum seeking a certificate of probable cause permitting full appellate review.  *See* 15 M.R.S. § 2131(1); M.R. App. P. 2(b), 19.  We entered an order granting a certificate of probable cause.  *See* 15 M.R.S. § 2131(1); M.R. App. P. 19(f).  The appeal is now before us on the merits.

## II. LEGAL ANALYSIS

[¶11]   The prohibitions against double jeopardy are concisely stated in the Maine and United States Constitutions.  "No person, for the same offense, shall be twice put in jeopardy of life or limb."  Me. Const. art. I, § 8; *see also* U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . .").

[¶12]   Whether a criminal prosecution violates the constitutional prohibitions against double jeopardy is a question of law that we review de novo. *State v. Mitchell*, 1998 ME 128, ¶ 4, 712 A.2d 1033.  The state and federal constitutions offer the same extent of protection.  *State v. Pineo*, 2002 ME 93, ¶ 9, 798 A.2d 1093.

[¶13]   The constitutional prohibitions against double jeopardy prohibit (1) "a second prosecution for the same offense after acquittal"; (2) "a second prosecution for the same offense after conviction"; and (3) "multiple punishments for the same offense."  *State v. Labbe*, 2009 ME 94, ¶ 4, 979 A.2d 693 (quoting *Ohio v. Johnson*, 467 U.S. 493, 497-98 (1984)).

[¶14]  Because a person, by one act or transaction, may violate multiple criminal laws, courts apply "the *Blockburger* test" to determine whether the crimes enumerated by those multiple statutes are "the same offense" for purposes of double jeopardy protections.  *See Blockburger v. United States*, 284 U.S. 299, 304

(1932); *Newell v. State*, 371 A.2d 118, 119 (Me. 1977). The test asks whether each statutory provision requires proof of a fact that the other does not. *Blockburger*, 284 U.S. at 304; *see also Newell*, 371 A.2d at 119. If each statutory provision requires a unique proof of fact, the *Blockburger* test is satisfied and there is no double jeopardy violation by subsequent prosecutions or multiple punishments. *Blockburger*, 284 U.S. at 304; *Newell*, 371 A.2d at 119.

[¶15] The first statute in Chapter 15 of the Criminal Code, the chapter containing the theft crimes, is known as the consolidation statute. It provides that "[c]onduct denominated theft in this chapter constitutes a single crime." 17-A M.R.S. § 351 (2014). The statute authorizes the State to charge a defendant with theft pursuant to one section and prove theft by evidence of conduct that would constitute a theft pursuant to any of the sections contained in Chapter 15, subject only to the trial court's power to control for unfair prejudice to the defendant. *Id.*; *see also, e.g.*, *State v. Fox*, 494 A.2d 177, 179 (Me. 1985).

[¶16] Pursuant to 17-A M.R.S. § 353(1)(A) (2014), entitled "Theft by unauthorized taking or transfer," "[a] person is guilty of theft if . . . [t]he person obtains or exercises unauthorized control over the property of another with intent to deprive the other person of the property." For purposes of section 353, "'exercises unauthorized control' includes but is not limited to conduct formerly defined or known as . . . larceny by conversion," among other common law crimes.

17-A M.R.S. § 353(2) (2014); *see also Larceny, Conversion, Direct Conversion*, Black's Law Dictionary (6th ed. 1990) (indicating that larceny by conversion includes the disposal by sale of the property of another). Further, Chapter 15 defines the "[i]ntent to deprive" the owner of the property as including having the conscious object to dispose of the property. 17-A M.R.S. §§ 352(3)(C), 353(1)(A) (2014).

[¶17] Pursuant to 17-A M.R.S. § 359(1)(A) (2014), entitled "Receiving stolen property," "[a] person is guilty of theft if . . . [t]he person receives, retains or disposes of the property of another knowing that it has been stolen, or believing that it has probably been stolen, with the intent to deprive the owner of the property." For purposes of section 359, "'receives' means acquiring possession, control or title, or lending on the security of the property," and "property is 'stolen' if it was obtained or unauthorized control was exercised over it in violation of [Chapter 15]." 17-A M.R.S. § 359(2) (2014).

[¶18] Theft, as defined by section 353, is sometimes called a "continuing" or "continuous" crime, in that a person continually violates the statute as long as he or she exercises unauthorized control over the item with the intent to deprive the owner of the property. *E.g., State v. Moulton*, 481 A.2d 155, 158-59 (Me. 1984); *Mayo v. State*, 258 A.2d 269, 270 (Me. 1969); *see also* 17-A M.R.S. § 353(1)(A). Thus, if a person steals an item in one county and carries that item into another

county, he or she has violated section 353 in both counties. *Moulton*, 481 A.2d at 158-59; *Mayo*, 258 A.2d at 270. The State may elect to prosecute the thief in either county under these circumstances, but a conviction for theft in one county bars a prosecution for theft in the other. *Mayo*, 258 A.2d at 270. The same would be true of theft pursuant to section 359, as a person who receives stolen property in one county and carries it into another has also retained the stolen property in the other county. *See* 17-A M.R.S. § 359(1)(A).

[¶19] Ayotte's theft of the silverware was a continuing theft, given that he continually exercised unauthorized control over the stolen silverware when he took it in South Portland, carried it to Biddeford, and converted it by selling it. The continuing nature of the crime does not allow the State to prosecute Ayotte multiple times in different venues of the same court. *Mayo*, 258 A.2d at 270. Thus, Ayotte's conviction in Cumberland County was a bar to a second prosecution for the same theft in York County.

[¶20] Application of the *Blockburger* test establishes that the second indictment charged Ayotte with the same offense for which he had already been convicted and punished. As we recognized in the 1978 theft case *State v. Viger*, "[i]n proving the essential elements of theft by unauthorized taking, the State must necessarily prove the essential elements of theft by receiving stolen property" as those elements are enunciated by the two statutes. 392 A.2d 1080, 1085

(Me. 1978). To prove that a person exercised unauthorized control over the property of another with the intent to deprive the owner of the property, *see* 17-A M.R.S. § 353(1)(A), the State must prove that the person acquired possession of property he knew was stolen with the intent to deprive the owner of the property, *see* 17-A M.R.S. § 359(1)(A), (2). Neither statute *requires* proof of a unique element. *See Blockburger*, 284 U.S. at 304.

[¶21] The State argues that Ayotte was not twice convicted of or punished for the same offense because disposal of the stolen property is an element unique to the York County case, which charged theft pursuant to section 359. This argument fails for three reasons. First, proof of disposal of the property is not required by section 359, as section 359 is violated when a person receives, retains, *or* disposes of the property. 17-A M.R.S. § 359(1)(A). The *Blockburger* test looks for a *required* unique element of proof in each crime. *Blockburger*, 284 U.S. at 304. Second, the disposal element is not unique to section 359, as section 353 also criminalizes the disposal of stolen property. Theft by unauthorized taking or transfer criminalizes the unauthorized exercise of control over the property of another, which includes the conversion of the property. 17-A M.R.S. § 353(1)(A), (2); *see also* 17-A M.R.S. § 352(3)(C). Third, even if the disposal element were required *and* unique to the theft crime enumerated by section 359, the *Blockburger* test requires that *each* crime require an element of

proof that the other does not—the test is not satisfied when only one of the crimes has a unique element. *See Blockburger*, 284 U.S. at 304.

[¶22]  The State also argues that the two prosecutions were for different offenses because the conduct targeted by each prosecution—the taking of the items in South Portland and the sale of the items in Biddeford—occurred in different counties.  The State's reliance on the fact that Ayotte's actions occurred in different counties is misplaced.  Although the commission of a crime within a particular county makes that county a proper venue for any resulting prosecution, *see* M.R.U. Crim. P. 21, and a crime that spans multiple counties may be prosecuted in any *one* of those counties, *see Moulton*, 481 A.2d at 159, this does not permit the repeated prosecution of a criminal offense in multiple counties in our single statewide court,[1] *see Mayo*, 258 A.2d at 270 (Me. 1969).

[¶23]  This is unlike the situation where a defendant, by one act, violates the laws of two *sovereigns*, which may each prosecute him or her for the same underlying conduct without violating double jeopardy protections.  *See State v. Castonguay*, 240 A.2d 747, 749-50 (Me. 1968) (United States and State of Maine); *State v. Mitchell*, 1998 ME 128, ¶¶ 2, 9, 712 A.2d 1033 (Passamaquoddy Tribe and

---

[1]  Pursuant to the Maine Rules of Unified Criminal Procedure, the State of Maine prosecutes crimes within the single statewide Unified Criminal Docket.  *See* M.R.U. Crim. P. 1.  Prior to the recent unification process, crimes were either prosecuted in the Superior Court or District Court, each of which is also a single, statewide court.  *See* 4 M.R.S. §§ 101, 151 (2014).

State of Maine).  Here, the same sovereign, the State of Maine, twice prosecuted, convicted, and punished Ayotte for the same theft of the same property belonging to the same victim.

[¶24]  The only remaining question is to determine whether trial counsel's failure to seek dismissal of the York County indictment establishes that Ayotte was deprived of his right to effective representation, which is the reason he claims entitlement to post-conviction relief.  At oral argument, the parties disputed whether they had agreed that a determination of the double jeopardy issue favorable to Ayotte would also prove his ineffectiveness claim.  Because the trial court concluded that the York County prosecution was not barred by the conviction in Cumberland County, it did not reach the question—if it was in fact contested—of whether trial counsel's failure to seek dismissal of the York County indictment on double jeopardy grounds constituted constitutionally deficient representation.

[¶25]  Although the issue was not reached in the trial court, we conclude that in these circumstances, where trial counsel failed to assert a dispositive constitutional defense to a prosecution, notwithstanding existing law supporting the existence and availability of that defense, Ayotte was denied effective assistance of counsel.  An accused's right to counsel is not fulfilled "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659 (1984).  Here, the State submitted trial

counsel's affidavit, which stated that, after researching the issue, counsel did not seek dismissal of the York County indictment because he concluded that the prosecution would not be barred by the state or federal protection against double jeopardy. In some circumstances, the decisions of counsel that result in a forfeiture of an accused's constitutional rights are not tantamount to ineffectiveness. *See, e.g., Roberts v. State*, 2014 ME 125, ¶¶ 25-27, 103 A.3d 1031. Here, however, counsel failed to raise the defense as a result of his erroneous conclusion about the state of the law and Ayotte's rights. Assertion of that defense would have insulated Ayotte from prosecution of the charge altogether. Under these circumstances, the only possible conclusion is that trial counsel's error deprived Ayotte of effective representation of counsel.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

**On the briefs:**

Alison B. Meyers, Esq., Hanley Law, LLC, Portland, for appellant Christopher Ayotte

Kathryn Loftus Slattery, District Attorney, Prosecutorial District One, Alfred, and Anne Marie Pazar, Esq., for appellee State of Maine

**At oral argument:**

Alison B. Meyers, Esq., for appellant Christopher Ayotte

Anne Marie Pazar, Esq., for appellee State of Maine

York County Superior Court docket number CR-2014-263
FOR CLERK REFERENCE ONLY